Good morning, your honors. Ray Halperin on behalf of the petitioner Mohab Khella. Today, your honors, we have three issues in this case. We have the asylum issue, we have the continuance issue, and we have the administrative closure issue. Just as a brief history regarding the asylum, petitioner underwent his entire asylum hearing in front of the immigration judge. The immigration judge lost the file. The immigration judge subsequently to that requested a copy of the file from the government and in the transcript states that he received a copy of the file from the government. The immigration judge's decision clearly reflects the fact that he did not have this case when he issued the decision. He didn't remember any of the testimony. He didn't raise the issue at all of the expert witness. He stated that Petitioner was passing out literature, which was not even well – didn't even happen in this case. He stated even in his decision that Petitioner said that he would go back to Egypt, which Petitioner – initially the government was contesting jurisdiction, but they backed off that point. So the determination that was made adverse to your client was that he hadn't made a prima facie case for past persecution. Correct. So the best case scenario, now that the jurisdiction is off the table, if this court were to determine that there was a showing of past persecution, it still would have to go back, right? Correct, because this court doesn't have that jurisdiction. Because it wasn't – it didn't go beyond that. I mean, even the things that you're talking about that are – were adverse to your client. Basically, your client lost at the stage that there was no past persecution – that there was no prima facie. So if you prevail here, it would be to go back and – with that presumption and move forward from that. Right. And with that presumption, there was no adverse credibility findings. So therefore, the only issue is, did he meet that standard? And if this court remands it by saying yes, then, of course, his case will be granted. What does that do – what would that do to your appeal from the denial of the motion for continuance and administrative closure? Well, basically, if he gets granted the asylum, he wouldn't need to do that secondary. That would be a different form of relief. He was seeking adjustment of status based on employment. He wouldn't need that if he got granted the asylum, because the asylum would give him the eligibility to get his green card after a year. Well, if there was a – but I guess that's what I'm asking, that you're seeming to say that if – if you prevail on that, did it go beyond whether there were changed country conditions or what he had to show about – so, I mean, that still would be a determination that would have to be made. Well, they – actually, in the transcript, the judge, not having the file, did try and see if he can, you know, somehow deny this case on another grounds, and he did. How many years later was that, that he did that? That was the same time. This was all the same time when he discussed the asylum. In the transcripts, when he lost the file, he kept bringing Petitioner back to court. And at one point that he brought him back, he said, well, let's discuss relocation. So they asked the Petitioner questions. The government didn't have any response because he couldn't relocate. He said, I'm – I'm going to be killed. I mean, I can't go anywhere. There was no other questions asked. So he already went through that, found that. No, the main problem is that the judge had no idea what he was talking about because he didn't have the file. He didn't understand what had happened in this case. So he went through an internal location inquiry when – because he was trying – what he was trying to do was – and it's clear in the transcript. He was trying to say, okay, government, if you're going to agree, you know, if I, you know, grant this case, are you going to file an appeal? And the government said, yeah, we're going to file an appeal. So then he said, well, then I can't do anything. I'm going to have to find the file. I'm going to have to, you know, do this. So that's basically what happened here. So that's not been done. That's not been done. So you're – if you prevailed, your client would go back with a presumption of past persecution. Presumption of past persecution and a presumption that he can't relocate anywhere else because that was accomplished. Okay. Thank you. Okay. So that's regarding the asylum, which, honestly, this Court just last year, Morgan v. Mukasey – I don't want to argue the merits of the asylum, but clearly Coptic Christians are a persecuted group. I mean, it's been found over and over by this Court in Malte. And my client, there was no adverse – as I said, there was no adverse credibility. Even the government didn't really have anything to argue back then when the transfer was heard. So it's just a matter of why did this judge go through the whole, you know, issue a decision just to get it off his calendar and talk about a totally different case. And then, of course, the Board, you know, affirmed without any opinion whatsoever, filed the Ninth Circuit. Ninth Circuit, you know, dismissed it. They filed with this Court saying, you know, the case has been reopened now by the Board, so we have to dismiss it based on lack of jurisdiction, which was in conformity. We brought it back. Now the Ninth Circuit, well, they've just withdrawn the argument, but I have to figure out why were they even arguing that in the first place. So that took a few, you know, time for me to – and then Friday I find out that they're not going to be going through with that argument. But clearly there was a violation of due process regarding the asylum claim. So, I mean, he clearly met the requirements, and if the judge had the file in front of him when he issued the decision and went through with the expert, went through, I mean, it was specific, it was cogent, there was nothing in this file that would have indicated that he should not have been granted the asylum. So that's regarding the asylum. Regarding the continuance, I don't know if you want me to argue that, or because I have, you know, regarding the continuance, I mean, clearly this Court in Ahmed v. Holder laid out, you know, reasoning for why a continuance should be granted. They said, one, it has to be based on Petitioner's conduct. Two, the inconvenience to the Court. And three, the number of continuances granted. Now, the Board of Immigration Appeals, what they did was they said that there was no good cause shown because the Petitioner had notice of findings from the Department of Labor, the notice of findings said that they're going to – they're intending to deny the case. The Board, though, in the first instance raised these issues. There was no reason to raise them because the Petitioner himself is the one who submitted this document to the Court. And he submitted the document to the Court to show the Court that, look, we're at the Department of Labor stage. A labor certification, as the Court correctly stated, the ones filed in 01 for 245i were taking between three to five years. For a labor certification to go through, you have to first go through the State Workforce Agency. Once they finish all that recruitment, they send it over to the Department of Labor. That's a good thing that it gets sent over to them. That means Department of Labor is working out we're almost at the end. The Board comes out and starts interpreting this as an intent to deny. A notice of findings is the application is a defective. You have a few days, 30 days or whatever, to submit your response. They saw that as something adverse. They didn't go through whether Petitioner's conduct only had 30 days. That's all he had, 30 days. He never asked for another continuance. That was the one continuance. There was no inconvenience to the Court because it was just brought back to the Court. And as I said, there was only one convenience. He didn't do it for delay. He had filed this case back in 2001. And it was now towards the end. He showed proof. The Board just came back with this, okay, we're reading this notice of intent, which was never even raised in the whole Immigration Court proceedings. And if it was raised, it would have been brought up. Hello, this is because we are at the Department of Labor. That's a good thing. That's not something that's supposed to be looked at negatively. But so the Board erred in that decision. Now, the administrative closure. That, I think, is a topic where the government is arguing dies carbarubias, in which this Court has stated that there's no discretion. Now. No jurisdiction. No jurisdiction. I'm sorry. Here in this case, what we have is the case was brought back to the Court. The judge asked the government, what is your position? The government said, we can't. We're going to have to say no because we don't have authority to administrative close. So they said they didn't have authority. I don't equate that as an opposition because if you don't have authority to do something, then you're not really saying no. You're not saying yes. You're just saying can't do. The Board came back and said they realized that the government didn't really oppose, and that's the whole thing. You know, if we don't have an agreement by both parties, we can't do it. But they didn't really have that. So they initiated a standard. They said the standard is going to be, I just want to say, I only have 46 seconds. I'm going to say it for rebuttal. But they said that the standard is prejudice. Prejudice has been shown. And that is a standard that I'm going to argue that this Court does have because the Board itself set the standard. This isn't like D.S. Correa's, isn't it? The Board itself set the standard. So this Court does have jurisdiction for that purpose. And I only have 30 seconds, and I'd like to save it for rebuttal, so. All right. Okay. Thank you. Thank you. Thank you. Good morning. May it please the Court. Gladys Stephens-Guzman on behalf of the Attorney General. Can I ask you, has the government found the file yet? Well, we have a full file here with transcripts, and it's been filed with the Court. No, the file that the I.J. had, that the I.J. didn't have, that he claimed he didn't have. Well, our office hasn't called the Immigration Court to see if they have it. But the fact that the Executive Office of Immigration for Immigration Review has produced the full file is indication that the Immigration Court does have the entire file in its record. All right. So how do you explain what the I.J. did here? What the I.J. did was continue the proceedings until he had a copy from the government of the entire file. So at the point he produced his decision, his original decision regarding the underlying asylum application, he had a full copy of the file. It wasn't produced in the traditional fashion, which is through the Executive Office for Immigration Review, but nevertheless a complete copy of the record because it was what the government produced to him. The fact that we have a full copy today is indicative of the fact that the immigration judge must have had a full record when he produced that opinion back in 2001. And how do we account for some of the sort of strange things like omitting religious discrimination and talking about political persecution and things? What do we do with that? Just say it's an irrational decision? The government cannot today provide an explanation for those. Those are clear errors of fact in the immigration judge's decision. But nevertheless, if the other parts of the immigration decisions do support his finding of non-eligibility for the release requested, he did find if the court would allow us, because we did waive our argument when we filed our opposing brief before this court, but because the court is asking if I were allowed to answer, the immigration judge also stated to the fact that he lived seven years after the original incident back in 1990. He continued to live there seven years without incident. He also came into the United States for a two-week stay on a business visa in 1995. He did not seek asylum. He did not request protection. He went back to Egypt and remained there two more years without incident. He traveled around Egypt performing his employment successfully for a whole span from 1990 to 1997. Nobody bothered him. Nobody did anything to him. He lived and prospered as a professional in Egypt despite the fact that he was a Coptic Christian and despite the fact that he was once subjected to the Giza. Well, just procedurally from the standpoint here, that if he was found credible, right? Yes. So and the IJ ruled against him in terms of a prima facie case of past persecution, correct? Yes. All right. So we do have incidents in the record if he was found credible that if, you know, that talk about things being burned down and, you know, as far as that goes. So what if we were to find past persecution if the prima facie case was met, then what's your position? What would be the procedural? What would be the status of a remand? What would be determined on the remand? If the court were to find that substantial evidence in the record compels a contrary conclusion regarding the past persecution, then remand would be limited to the court, to the immigration court, determining whether that past persecution is sufficient to grant him asylum and whether that past persecution is sufficient to award him a withholding of removal, whether it's sufficient for a basis of well-founded fear of future persecution. Well, wait a second. So if we were to find that there was past persecution based on his religion, then a presumption arises of a well-founded fear of future persecution. Which the government would then have the opportunity to rebut. Okay. That makes sense. And then with that evidence, the immigration judge, after the presumption arises and the government has the opportunity to rebut. But obviously look through. I mean, that tells you the lens you have to look through at whatever the evidence the government puts on it. Of course. That would be correct. Absolutely. Now, you asked for a supplemental briefing. What exactly did you want to brief? Well, because in the government's original brief, the government put forth a no-jurisdiction argument. And upon review of the original case, the timeline basically, the government realized that the original case was dismissed for lack of a final order of removal because the board had reopened the case. And I believe that when I checked PACER, the original case had been fully briefed at that point. The government realized its brief was wrong in its argument that the court didn't have jurisdiction. When, in fact, under Stone v. INS, the court does have jurisdiction. You, the government, realized it was wrong. Yes. Someone. Me, the government. Yes. Would you be saying anything in that brief different from what you said in the earlier briefing that is available to us? Different attorneys do have different perspectives. So I would propose that I might say something different than the original brief if I were given the opportunity. Nevertheless, if the court, for judicial economy purposes, if the court would like for us to instead of put forth a new brief, would like a copy of the prior brief, we would certainly. . . I'm going on leave tomorrow for a week and a half, but I could speak to you. . . But all that you're really. . . I mean, you can say everything here today, can't you? I'm sorry, ma'am? You can say everything you want to say here today. I certainly can. I'm just. . . Because we have the record of, before the IJ, of what, you know, that he's found credible, and we have the facts that are alleged. So. . . Of course. You can say anything relative to that with the law that you think is appropriate. I, of course, could. But since, again, we waived our argument, I am concerned with the court's case law, saying that once the respondent waives its opportunity to present an opposing argument, I have to respect that. But if the court's, if the court opens the door for me to argue it, I certainly will. But what do you want to argue? What is it that you want to argue? That substantial evidence does, in the record, does not, would not compel a reasonable factfinder to conclude, contrary to the immigration judge's decision back in 2001, that Petitioner established eligibility for asylum withholding of removal or protection under the CAT. Aside from, of course, what is properly before the court, which is the denial of the continuance and the administrative closure. Don't we. . . Well, and you don't want the court to. . . What I hear is. . . I mean, I'm still going to look at the record. Of course. And see whether the appellant wins on the issue. But I guess a really harsh view could be, since you never even argued it, to say that they win automatically or something. I would disagree. I think the practical consequences of a petitioner waiving their argument are very different from when a respondent waives their opportunity to respond, to present an argument. Well, wait a minute. Wait a minute. You're saying you want a do-over. You're saying the government did it wrong the first time. I'm a better lawyer. I'm going to do it right. And I want the opportunity to do it right. Oh, my gosh. I would hate to say on the record that I'm a better lawyer than my colleague. But that's what you're telling us, right? Aren't you saying that I could do it differently, I could do it better, and I could show you why the government should win? I'm saying that the government got it wrong on the very limited jurisdictional issue and on one of the three issues, and that the government would like the opportunity to supplement its brief on that issue if the court allows us to. I would not like to re-brief. Why can't the government just do all this? Say we were to roll in favor of the petitioner and we sent it back under Ventura and you go back to the BIA. It's all in the government's hands anyway. Why can't you just make those arguments? Because the government believes that petitioner did not meet the criteria for eligibility for asylum withholding of removal or CAPT. The petitioner is not even asking us to make that rolling. The petitioner is asking us to take the facts as true and to find that there was past persecution and to remand. Yes, Your Honor, he is. But the government's position is that he did not meet past persecution, that he did not show past persecution. So we cannot agree to remand. On the record, wouldn't you agree that at worst this is a mixed motive case? Not when he was able to successfully live at ease without any incident for seven years after, in Egypt after his original incident. Not when he was able to acquire employment right after he decided to close down his pharmacy. Doesn't that go to the government rebutting the presumption of a well-founded fear of future persecution? It also goes to whether or not he might have faced persecution based on a protected ground. All right. Well, I suppose it goes, in your view, it goes to whether or not any presumption even arises. Exactly, Your Honor. I guess my question is, it's part of our records are your previous brief, you know, and the appeal that was dismissed. And I just I suppose you could have the opportunity. But I don't know what you want to say on the merits. It wasn't said. I guess your answer is, well, we remain have a slightly different take on it. It's essentially the same thing. You're contesting past persecution and well-founded fear. I would believe so. Would you like us to address as well a continuance issue? No, I don't think you need to. And you're over the time anyway. So thank you very much. Okay, well, thank you, Your Honors. I'm just going to briefly state that the problem with this whole case is that the facts are not, were not understandable. The government now is arguing that he lived seven years and then that's it, nothing happened. But the problem is in 97, right before he came, that's when his major problems started. He had problems in 90. Between 90 to 97, he said that he was hardly home. He was traveling from work and company for one week. But his major problems happened in 97 when they threatened to kill him, when they threatened when his life was threatened. That's why he came. So that's when those things happened. How long was that before he departed? It was, he came, as soon as he was threatened, about a month later he came to the United States. His pharmacy got burned down. He was threatened by the Islamic fundamentalists. The police said we're out to get you for the Jizaya 98. You're going to serve five years in jail. He was faced with either five years in jail or being killed by the Islamic extremists. He chose to come to the United States. Do you agree that if we are convinced that past persecution was shown, that the proper remedy is a remand at which the government would still have an opportunity to rebut that presumption? Correct. I mean, there is a rebuttable presumption. So they would have a hard time doing that. You'd have the benefit of the presumption. They would have a burden to... Correct. Which would be extremely difficult, I believe, but that's what happens at the remand. The government would have to show that, and it would be very difficult for them to show. I know you're over your time, too, but what is the status of this labor certification? Well, the I-140 was approved. He has an approved I-140. So the problem, though, now is with the length of time that this took, now five years, the priority dates are backlogged at this point. So if it does get remanded on that issue, I mean, there's case law that says that they have to wait, but it will probably be easier to just get the asylum grant. It would be quicker than going through the adjustment. Well, what's easier, you know, kind of the, I mean, we have to kind of follow the law. Right. Exactly. But, I mean, he has those... What's easier isn't, you know, that's... Correct. That's not our milestone or our benchmark. Right, but he has both options available to him, bottom line. All right. Thank you, Counsel. Thank you, Your Honors. Keller v. Holder is submitted. Hernandez v. Astew has previously been submitted as of today.
judges: Canby, Wardlaw, Callahan